UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOSE ISRAEL MACHUCA DEL CID,

               Petitioner,

   v.

MARKWAYNE MULLIN et al.,

               Respondents.

Case No. C26-1271-SKV

ORDER GRANTING IN PART
PETITION FOR WRIT OF HABEAS
CORPUS

## I.    INTRODUCTION

Petitioner, who is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington, brings this 28 U.S.C. § 2241 habeas action through counsel seeking release from detention and injunctive relief baring his removal without additional process. *See* Dkt. 1 at 11–12. Respondents filed a return to the petition, Dkt. 12, together with supporting declarations and exhibits, Dkts. 13–14, and additional documents at the Court's request, Dkt. 19. Petitioner filed a reply and a response to Respondents' filing at Docket No. 19. *See* Dkts. 15, 20. Having considered the parties' submissions and the governing law, the Court GRANTS the petition in part and ORDERS that

Petitioner be released from detention within twenty-four (24) hours. The remaining claims and requests for relief are addressed below.

## II.   BACKGROUND

Petitioner is a native and citizen of El Salvador. *See* Dkt. 1 at 8. On or about July 22, 2000, he first entered the United States and has since resided in Maryland. *See id.*; Dkt. 15 at 3. On or about March 11, 2002, Petitioner was granted Temporary Protected Status ("TPS"). *See* Dkt. 13 at 2. On October 13, 2015, Petitioner pled guilty to a fourth-degree sex offense and was sentenced to eleven months and twenty-nine days of confinement. *See id.*; Dkt. 1 at 8. On November 29, 2017, the Department of Homeland Security ("DHS") initiated removal proceedings against him and, on December 12, 2017, took him into ICE custody. *See* Dkt. 1 at 8; Dkt. 13 at 2. Due to his conviction, Petitioner's TPS approval was withdrawn. *See* Dkt. 13 at 2.

On April 4, 2018, an Immigration Judge ("IJ") ordered Petitioner removed from the United States, denied him asylum, and granted him withholding of removal to El Salvador. *See id.*; Dkt. 1-3 at 2. No appeals were taken, and the removal order became final on that date. *See* Dkt. 1 at 9. On May 4, 2018, Petitioner was released on an Order of Supervision ("OSUP"). *See* Dkt. 13 at 2.

On March 6, 2026, Petitioner was re-detained at a scheduled check-in with ICE and served with a Notice of Removal to Mexico. *See* Dkt. 1 at 9; Dkt. 13 at 2; Dkt. 14-3 at 2. He was subsequently transported from Maryland to the NWIPC, where he remains detained. *See* Dkt. 15 at 4. On March 14, 2026, Petitioner was served with a second Notice of Removal to Mexico. *See* Dkt. 14-7 at 2.

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 2

On April 14, 2026, Respondents filed a notice informing that Petitioner would be removed from the United States within forty-eight to seventy-two hours. *See* Dkt. 8. They appended a Notice of Imminent Removal which indicated ICE was in possession of a travel document for Petitioner. *See* Dkt. 8-1. Petitioner filed a motion for a temporary restraining order ("TRO") to halt his removal to Mexico, alleging he had not received adequate process to assert a reasonable fear claim as to Mexico. *See* Dkt. 9 at 2. A reasonable fear screening conducted by United States Citizenship and Immigration Services on March 24, 2026, found Petitioner did not establish that it is more likely than not that he would tortured in Mexico. *See* Dkt. 13 at 3; Dkt. 14-8 at 2. The Court provisionally granted a TRO prohibiting Petitioner's removal pending further briefing on the motion and the petition. *See* Dkt. 11.

## III.   LEGAL STANDARD

Federal courts have authority to grant writs of habeas corpus to individuals detained in "violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Yildirim v. Hermosillo*, No. C25-2696-KKE, 2026 WL 111358, at *1 (W.D. Wash. Jan. 15, 2026). "In habeas cases, federal courts have broad discretion in conditioning a judgment granting relief," *Lujan v. Garcia*, 734 F.3d 917, 933 (9th Cir. 2013), and may dispose of habeas matters "as law and justice require," 28 U.S.C. § 2243.

## IV.   DISCUSSION

Petitioner asserts three grounds for relief:  (1) his continued detention violates 8 U.S.C. § 1231(a)(6), as interpreted by *Zadvydas*, because the six-month, presumptively reasonable removal period expired in 2018, six months after his removal order became final, *see* Dkt. 1 at 10; (2) his re-detention violated his Fifth Amendment right to due process because lawful removal to El Salvador or any third country is not imminent and because he has not been

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 3

afforded opportunity to present his fear claims to an IJ, *see id.* at 10–11; and (3) ICE violated its own regulations and his due process rights when it revoked his OSUP, *see id.* at 11.  He seeks three forms of relief:  (1) a permanent injunction prohibiting his removal to El Salvador until and unless withholding of removal is terminated; (2) a permanent injunction prohibiting Respondents from removing him to any third country without notice and opportunity to seek withholding of removal before an IJ; and (3) immediate release from custody and reinstatement of his OSUP.[1]  *See id.* at 11–12.

A.      Re-Detention

The INA expressly permits detention of noncitizens who were admitted to the United States but subsequently ordered removed during immigration proceedings.  *See* 8 U.S.C. §§ 1225(b), 1226(a), 1226(c), 1231(a).  Section 1231(a) governs the detention and release of noncitizens such as Petitioner who have been ordered removed, and it provides that the DHS is required to detain a noncitizen during the 90-day "removal period."  8 U.S.C. § 1231(a)(2).  After the removal period expires, DHS has the discretionary authority to continue to detain certain noncitizens or to release them on supervision.  *See* 8 U.S.C. § 1231(a)(6).  "Once ICE releases a [noncitizen] on an OSUP, 'ICE's ability to re-detain that noncitizen is constrained by its own regulations.'"  *Alfonso v. Bondi et al.*, No. C25-2748-TL, 2026 WL 395326, at *3 (W.D. Wash. Feb. 12, 2026) (alteration in original) (quoting *Manivong v. Bondi,* No. C25-6747, 2025 WL 3211455, at *5 (C.D. Cal. Sept. 3, 2025)).

Non-citizens subject to a final removal order, like Petitioner, whose removal period has expired can be released from detention (and later re-detained) under two regulations:  8 C.F.R. §

---

[1] Petitioner adds an additional request for relief in his Reply.  He asks the Court to enjoin Respondents from removing him from the judicial district in which he resides, neighboring states, or the continental United States until and unless certain procedural steps are taken.  *See* Dkt. 15 at 19.  Petitioner may not supplement his petition in his Reply, and the Court declines to consider this supplemental request for relief.

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 4

241.4 or 8 C.F.R. § 241.13.  Section "241.4 applies to noncitizens who have been ordered removed in general, while § 241.13 specifically applies to noncitizens whom the government has determined 'there is no significant likelihood . . . [that they] can be removed in the reasonably foreseeable future.'"  *Lecky v. Bondi*, No. C25-2637-TLF, 2026 WL 266066, at *5 n.2 (W.D. Wash. Feb. 2, 2026) (alteration in original) (first citing 8 C.F.R. § 241.4(b)(4); and then quoting 8 C.F.R. § 241.13(b)(1)); 8 C.F.R. § 241.13(b)(1) ("Section 241.4 shall continue to govern detention of aliens under a final order of removal . . . unless the Service makes a determination under this section that there is no significant likelihood of removal in the reasonably foreseeable future.").  "The procedures set forth in both 8 C.F.R. § 241.4 and 8 C.F.R. § 241.13 are intended to provide noncitizens with fundamental due process protections that courts have found to be constitutionally required."  *Hall v. Nessinger*, No. 25-CV-667-JJM-PAS, 2026 WL 18583, at *4 (D.R.I. Jan. 2, 2026) (cited sources omitted).

The two provisions cabin ICE's revocation authority differently.  8 C.F.R. § 241.4 authorizes discretionary revocation of release by certain officials where:

(i) The purposes of release have been served;

(ii) The alien violates any condition of release;

(iii) It is appropriate to enforce a removal order or to commence removal proceedings against an alien; or

(iv) The conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate.

8 C.F.R. § 241.4(*l*)(2).  Release can also be revoked without certain officials' involvement where a noncitizen violates his or her conditions of release.  *Id.* at § 241.4(*l*)(1).  8 C.F.R. § 241.13 contemplates more limited grounds.  That provision provides that a noncitizen who is subject to a final order of removal but has been released from custody may be re-detained only for (1) failure to comply with the conditions set forth in the order of supervision or (2) if, pursuant to a change

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 5

in circumstances, ICE "determines that there is a significant likelihood that the . . . [noncitizen] may be removed in the reasonably foreseeable future." *Id.* at § 241.13(i)(1)–(2).  Noncitizens returned to custody for violation of release conditions or changed circumstances must be given notice of the reasons release was revoked and an opportunity to respond to those reasons through a prompt, informal interview. *See* 8 C.F.R. §§ 241.4(*l*)(1), 241.13(i)(3).

There is no documentation in the record expressly disclosing the statutory provision pursuant to which Petitioner was released in 2018.  Neither a copy of Petitioner's OSUP nor a notice of revocation was filed by Respondents as exhibits to their Return.  They also did not file a copy of a travel document purportedly in their possession or disclose the term for which it is valid or the status, if any, Petitioner would have in Mexico.  *See* Dkt. 8-1 (Notice of Imminent Removal stating ICE is in possession of a travel document).  The Court directed Respondents to produce those three documents.  *See* Dkt. 18.  In response, Respondents filed a copy of the Notice of Revocation of Release.  *See* Dkt. 19-1.  They reported being unable to produce Petitioner's OSUP because it is physically located in the National Records Center in Missouri. *See* Dkt. 19 at 2.  They further reported being unable to produce a travel document because one is not necessary for removal to Mexico, and they have not sought one.  *See id.*  Respondents filed copies of Petitioner's Maryland driver's license and work authorization, which they represented will suffice to remove Petitioner to Mexico.  *See id.*; Dkt. 19-2.

The notice of revocation Respondents filed indicates that Petitioner's OSUP was revoked pursuant to the second ground authorized by 8 C.F.R. § 241.13(i)—changed circumstances indicating a significant likelihood of removal in the foreseeable future.  *See* Dkt. 19-1 at 1. Section 241.13 *only* applies where there has been a "determination under . . . [§ 241.13] that there is no significant likelihood of removal in the reasonably foreseeable future."  8 C.F.R. §

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 6

241.13(b)(1) ("Relationship to § 241.4."). "Section 241.4 . . . continue[s] to govern the detention of . . . [noncitizens] under a final order of removal[] . . . *unless* the Service makes . . . [that] determination[.]" *Id.* Because the notice of removal indicates 8 C.F.R. § 241.13 applies, the Court concludes that a determination was previously made in Petitioner's case that there was no significant likelihood of removal in the reasonably foreseeable future. Because Section 241.4 does *not* apply where that finding is made, the Court deduces that he was released on an OSUP in 2018 pursuant to 8 C.F.R. § 241.13. Thus, the only revocation grounds and procedures relevant here are those outlined in 8 C.F.R. § 241.13(i)—not 8 C.F.R. § 241.4(*l*)(2).

Petitioner claims that ICE failed to comply with its own regulations when revoking his OSUP. In response, Respondents assert that Petitioner was lawfully re-detained because his OSUP "revocation was authorized under multiple grounds in 8 C.F.R. § 241.4(l)(2)[,]" including "to enforce a removal order[]" and "because other circumstances indicated that continued release was no longer appropriate, specifically, the availability of a viable removal option after years on supervision and Petitioner's criminal conviction." Dkt. 12 at 9. Respondents further assert that Petitioner was afforded an "initial informal interview required by 8 C.F.R. § 241.4(l)(1)" that allowed him opportunity to respond to those bases for revocation. *See id.*

A couple of problems affect Respondents' position. Critically, the record clearly indicates that 8 C.F.R. § 241.13, not 8 C.F.R. § 241.4, applies. Even if 8 C.F.R. § 241.4 were applicable, the text of the subsection relied upon by Respondents as the source of revocation authority does not explicitly require an informal interview.[2] Respondents purport to have provided one pursuant to 8 C.F.R. § 241.4(*l*)(1), but they make no claim that Petitioner ever

---

[2] The Court notes that Respondents have read the requirement from 8 C.F.R. § 241.4(*l*)(1) into 8 C.F.R. § 241.4(*l*)(2). The Court makes no finding as to whether an interview or other procedures are required by the Fifth Amendment and compel that interpretation.

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 7

violated his release conditions or that his release was revoked on that ground.  *See* Dkt. 12 at 9. More likely, any informal interview was provided due to the parallel requirement in 8 C.F.R. § 241.13(i)(3).

It would seem one of two things occurred, resulting in this divergence of Respondents' briefing from the documentary record.  Respondents may have submitted their Return in this matter *without reviewing* the notice of revocation and the grounds stated therein, nevertheless maintaining the position that no procedural deficiencies in the revocation process occurred.[3]  *See id.*  Or, Respondents withheld the document which factually refuted the legal argument set forth in their briefing.  The first scenario triggers profound concern about Respondents' counsel's inquiry into the basic facts of this case before filing a brief in this Court.[4]  The return filed makes arguments regarding an inapplicable statutory provision, while failing to offer arguments germane to the documented reason for revocation.  This inattention deprived Petitioner of an opportunity to further assess his case before filing a reply and unnecessarily burdened the Court. The second scenario has little explanation but bad faith.

Returning to Petitioner's claim, there is no indication in the record that ICE's authority to revoke Petitioner's OSUP triggered.  The Notice of Revocation of Release merely indicates that Petitioner's "case is under review for removal to an alternate country."  Dkt. 19-1 at 2. Respondents' interest in removing Petitioner to an alternate country says nothing about the feasibility, likelihood, or timeline.  Respondents have not identified *any* circumstances that

---

[3] Respondents disclosed that they do not have access to Petitioner's OSUP because it is physically in Missouri, and the Court therefore understands that they did not review that document prior to filing their return.

[4] At least one other court in this District recently reminded Respondents of their counsel's obligation under Federal Rule of Civil Procedure 11(b) to perform reasonable factual inquiry and warned that repeated failure to comply with Rule 11 may result in further Court action.  *See, e.g.*, *Barraza Laguna v. Hernandez*, No. C26-0864-GJL, 2026 WL 962127, at *1 & n.2 (W.D. Wash. Apr. 9, 2026) (return submitted without reviewing petitioners' A-files).  The Court reissues that reminder now.  Should circumstances preclude inquiry into the basic facts of petitioners' cases, Respondents are expected to acknowledge those limitations in their briefing.

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 8

changed regarding Petitioner's removability before his OSUP was revoked. They assert that Petitioner's driver's license and work authorization—issued in October 2024, over a year before his re-detention—suffice to deport him to Mexico. *See* Dkt. 19 at 2; Dkt. 19-2. They represent that a travel document is not required to remove Petitioner to Mexico, and therefore one has not been procured. *See* Dkt. 19 at 2. As Petitioner points out in his response to Respondents' supplemental document submission, the Mexican Consulate's website indicates that a passport and travel document are required for all individuals entering Mexico. *See* Dkt. 20 at 7; *General Information*, México Sección Consular de la Embajada de México en Estados Unidos, https://consulmex.sre.gob.mx/washington/index.php/servicios-para-extranjeros-visas?id=182 (last visited May 11, 2026) ("All foreigners, regardless of their nationality, are required to present a valid and not expired passport or travel document when entering Mexico (traveling by air, land or sea)."). Respondents do not indicate whether they were unable to procure a travel document for Mexico when Petitioner was released in 2018, whether they have a newly acquired ability to remove Petitioner with other identity documents, whether Mexico agreed to accept Petitioner, or whether any other change relevant to his removability in the reasonably foreseeable future occurred.

Even if some new arrangement with Mexico enables Petitioner's removal without a travel document or passport, such a changed circumstance would not alone make Petitioner's removal to Mexico reasonably foreseeable because Petitioner has not been afforded adequate process through which he could challenge his removal to Mexico. A number of courts in this district have recently addressed challenges to ICE's current third-country removal policy and have concluded that the policy violates due process. *See Baltodano v. Bondi*, No. C25-1958-RSL, 2025 WL 3484769, at *6 (W.D. Wash. Dec. 4, 2025); *Abubaka v. Bondi*, No. C25-1889-RSL,

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 9

2025 WL 3204369, at *6 (W.D. Wash. Nov. 17, 2025); *see also Nguyen v. Scott*, 796 F. Supp. 3d 703, 727–29 (W.D. Wash. 2025). In reaching these conclusions, the courts have relied on an earlier decision from this district, *Aden v. Nielsen*, 409 F. Supp. 3d 998 (W.D. Wash. 2019).

In *Aden*, the court held that a "noncitizen must be given sufficient notice of a country of deportation that, given his capacities and circumstances, he would have a reasonable opportunity to raise and pursue his claim for withholding of deportation." *Id.* at 1009. Citing to both the due process requirement that a petitioner be afforded "a full and fair hearing, an impartial decisionmaker, and evaluation of the merits of his or her particular claim," and to the statutory requirements of 8 U.S.C. § 1231, the *Aden* court held that in the context of a third-country removal, "[g]iving petitioner an opportunity to file a motion to reopen [his removal proceedings] . . . is not an adequate substitute for the process that is due in these circumstances." *Id.* at 1010 (citations omitted). Rather, the court concluded, the removal proceedings must be reopened so that a hearing may be held. *Id.* at 1011. In *Nguyen*, the court noted that "[t]he requirements set forth in *Aden* flow directly from binding Ninth Circuit precedent about due process protections before removal to a third country[,]" and held that ICE's current policy governing third-country removals "contravenes Ninth Circuit law." *Nguyen*, 796 F. Supp. 3d at 727–28.

The Court finds no basis to deviate from the reasoning in *Baltodano*, *Abukaka*, and *Nguyen*, and applies the same reasoning here. Respondents have not moved to reopen Petitioner's removal proceedings, and this Court finds they are obligated to do so to lawfully effectuate his removal. *See* Dkt. 1-4 at 2. Respondents have not indicated intent to reopen removal proceedings or advised how long that process may take. The Court therefore agrees with Petitioner that lawful removal is speculative, not reasonably foreseeable, and that

circumstances had not changed so as to endow ICE with authority under 8 C.F.R. § 241.13 to revoke his OSUP and re-detain him.[5]

"Courts have found that when ICE fails to follow its own regulations in revoking release, the detention is unlawful[.]" *Alfonso*, 2026 WL 395326, at *3 (quoting *Saengphet v. Noem*, 815 F. Supp. 3d 1142, 1152 (S.D. Cal. 2025) (collecting cases)). The remedy for unlawful re-detention is immediate release from custody restoring Petitioner to "the status quo before his release was improperly revoked." *Id.* at *6 (quoting *Hoang v. Noem*, No. C25-3177, 2026 WL 89319, at *5 (C.D. Cal. Jan. 12, 2026)). Accordingly, the Court ORDERS Respondents to release Petitioner within twenty-four (24) hours of this Order. Recognizing that Petitioner has been taken thousands of miles from his home, the Court further ORDERS Respondents to return Petitioner's identity documents and personal effects to him upon his release in order to fully restore Petitioner's liberty, including his ability to travel home. Based on Respondents' indication of intent to imminently remove Petitioner without affording him due process, and in violation of applicable regulations, the Court further GRANTS Petitioner's request for an order prohibiting Respondents from removing him to a third country without notice and a meaningful opportunity to be heard in reopened removal proceedings. *See* Dkt. 8. However, because the record does not indicate that Respondents seek, or will seek, to return Petitioner to El Salvador in violation of the IJ's order granting withholding of removal, Petitioner's request for an injunction prohibiting the same is DENIED.

## V.  CONCLUSION

For the foregoing reasons, the Court

(1) GRANTS in part the habeas petition at Docket No. 1;

---

[5] Because the Court finds Petitioner's detention unlawful on this ground, it does not address his other claims.

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 11

(2) ORDERS that Petitioner be released from custody within **twenty-four (24) hours** of this Order, subject to the same conditions of release that governed before he was re-detained, with his identity documents and personal effects;

(3) PROHIBITS Respondents from removing or seeking to remove Petitioner to a third country without providing him notice and a meaningful opportunity to respond in reopened removal proceedings before an immigration judge;

(4) ORDERS Respondents to file a certification confirming that Petitioner has been released in accordance with this Order within **forty-eight (48) hours** of the issuance of this Order;

(5) DENIES without prejudice Petitioner's request for an injunction barring his removal to El Salvador as premature; and

(6) FINDS MOOT Petitioner's request for preliminary injunctive relief at Docket No. 9.

Any fee petition shall be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

Dated this 12th day of May, 2026.

S. KATE VAUGHAN
United States Magistrate Judge

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 12